Good morning, and may it please the Court, Jonathan Cohn for the Appellants. Your Honours, this contract case between two foreign parties does not belong in the United States. It belongs in Canada. The plaintiff is from Canada, negotiations were in Canada, and there's ongoing proceedings in Canada in which the Canadian Supreme Court has already held that the proper forum for this dispute is in Canada. Are the same issues before the Canadian Court that are before this Court? Yes, and more. The Canadian Court addresses not just Lake Roosevelt, but also many, many other sites because tech polluted across Canada in addition to Lake Roosevelt. By contrast, this case addresses a mere duplicative subset of what's going on in Canada. Indeed, this stump of a case can't even address all the pollution that was discharged from tech smelter and trail because much of that pollution is still around trail and between trail and the Canadian border. So this case really is just a duplicative subset of what is going on in Canada. And there's one critical fact that tech wants this Court to overlook, which is, irrespective of what happens in this case and regardless of what happens in the Canadian contract dispute, Lake Roosevelt and all these sites can, will, and should be cleaned up by tech because tech has billions of dollars with a B. Last year alone, they made $1.5 billion, made over half a billion dollars in the last quarter of last year. They can pay for the cleanup many, many times over, and they should not be conflating the cleanup with the contract dispute, which is between two foreign parties and a contract was negotiated abroad and performance would occur abroad in the form of an international wire transfer sent from London, England to Vancouver, Canada. Can I, I'm sorry, finish what you were saying. Can I ask you a personal jurisdiction question? I mean, I was assuming we reached that issue. I was confused, starting with a factual issue, because the District Court seemed to focus on either your predecessor in interest or one of your predecessors in interest or something, that a contract of insurance that is the same as the one that's currently under consideration was done in Seattle. Is that correct? Can you just fill me in on that factual issue? I think you acknowledged that at least one of the insurance policies was brokered in Seattle. There are a couple things going on. One, the very first policy that the London insurers subscribed to was initiated by a broker in Seattle that in turn then used a broker in London. So what does that mean? Just help me understand. Was it the contract entered into in Washington? Because that's what the court seemed to be focusing on. No, that just means that for that first policy, the first step of the chain, the first step of the negotiations leading up to the contract began in Seattle. But it's just the first step. A London broker ultimately was used, and that was just the first policy. But the more critical error by the District Court with respect to personal jurisdiction was the District Court looked at the wrong policy by the wrong company. It was looking at a policy issued by an American insured that isn't even a party to this lawsuit anymore. And that was part of the basis for the District Court's decision on personal jurisdiction. So the District Court's statement or understanding that a predecessor in interest to the London insurers was located in Washington and that some contract was entered into, you're saying is factually incorrect. Well, no. What I'm saying is there are two things going on, two errors that were in the District Court's opinion with respect to personal jurisdiction. One is it focused on the fact that the very first policy was initiated by a Seattle broker, which in turn then used a London broker. So part of the negotiations in one policy began in Seattle. But a separate issue is the District Court, and then explaining why due process permitted personal jurisdiction, looked at a completely different policy that has no connection. That's irrelevant. Yeah, and that was part of the District Court's decision. So the only thing that would tie the London insurers to a contract in Seattle is that the beginning negotiations, the broker. For one of the policies. For one of the policies. Okay. We don't have to cover all the defendants because not all the defendants subscribe to that first policy. So that really can't be a basis for personal jurisdiction. And that's why in personal jurisdiction, TEC does not defend that decision on the grounds given by the District Court. And primarily, TEC shifts gears and places its emphasis on general jurisdiction, which wasn't even addressed by the District Court. TEC says the District Court found general jurisdiction, but that's clearly false. I respectfully refer your Honor to page 115, footnote 3 of the ER, in which the District Court said the issue of general jurisdiction was not clearly argued. And that's an understatement because it wasn't even pled. TEC didn't plead general jurisdiction in the operative complaint, the Second Amendment complaint. They didn't plead it until this past year in the Fifth Amendment complaint. And that by itself is a basis for reversing the decision below. And this ties back into foreign nonconvenience because as the Supreme Court held in Sinochem, when there are difficult jurisdictional questions and you have two foreign parties, that's a textbook case for dismissal on foreign nonconvenience. And the Court can and should address foreign nonconvenience first and dismiss it on that ground because at the very least, there are difficult questions on personal jurisdiction. TEC doesn't even try to defend that portion of the District Court's decision and places emphasis primarily on an issue which wasn't teed up to the District Court. At the very least, there are difficult questions on personal jurisdiction. You couple that with the fact that you have two foreign parties and this case should not be in the United States. And the only reason why it's here is that TEC engaged in deliberate and inappropriate form shopping, as the British Columbia Court already found. TEC made a run for the border. Home court advantage was not good enough. It ran into Washington in search of more friendly laws, which it would hope to translate into a judgment that TEC would then try to export back to Canada. That's TEC's idea of free trade, but international comedy demands more. And at bottom, TEC does not have any support for its novel position here. In TEC's 61-page brief, they do not cite a single case by any court, this court or any court in a foreign nonconvenience dispute that ever approved a U.S. forum when you have two foreign parties. TEC wants this court to go where no circuit court has gone before. And, indeed, we found only one District Court case that did what TEC is asking this court to do, and that case in Gonzales was reversed on appeal by the Fifth Circuit. This case is a contract dispute between two foreign parties. The negotiations were abroad. There's parallel litigation in Canada that is broader than this duplicative subset. Performance would be abroad. This case is here only because TEC made a run for the border. And at bottom, at the very least, there has to be a remand because the District Court didn't even address several critical factors or did not give any weight to several critical factors, such as the residency of the parties. The District Court gave no weight to that. The District Court also did not address the fact that this is a near duplicative subset of the litigation in Canada. District Court did not address the services suit clause, didn't even mention it. And the District Court did not discuss British Columbia's significant interest in this case. Didn't discuss it at all. And the failure to address these issues, as this court has held numerous times, most recently in Cardiano, the failure to address these factors by itself is a reason to reverse. Your Honors, there's no dispute that the British Columbia Court would provide a perfectly adequate forum. Indeed, it's a far superior forum, both because the British Columbia Court can address all the pollution, both in the U.S. and in Canada, and because there's no dispute that there's personal jurisdiction over all the parties in British Columbia. And this gets back to Judge Ikuda's questions and the Supreme Court's decision in Snowchum. When you have difficult questions on personal jurisdiction in two foreign parties, the case should not be in the United States. The case should be dismissed and form nonconvenience. What are the more favorable laws in the State of Washington which they're trying to hold on to? These laws concern the extent of the liability because they affect the burden of proof and the allocation of responsibility among carriers. Just to give a couple examples, one concerns the definition of sudden. The policies cover pollution only that is sudden, unexpected, and unintended. And under Washington law, there isn't a temporal component, but there likely is under British Columbia law, which would follow Ontario law. And that affects the amount of liability. Then there's the question of allocation of responsibility among carriers. Much of the pollution occurred decades before the London insurers entered the picture. And under Washington law, most likely, under Washington law, the insurers can still be held liable for the pollution that occurred before the policies, but that's not the case in Canada. So the extent of the liability would differ. And that's why the parties are fighting so vigorously in this international race to judgment. And this court has recognized in Seattle Totem that you shouldn't have this international race to judgment. You shouldn't have parallel proceedings, which are expensive and duplicative and wasteful and could lead to inconsistent results. We don't want parallel proceedings. And the question then becomes, which court should hear the case? Should it be Washington, where you have significant questions in personal jurisdiction, where you don't have a single U.S. party, and where you have only a subset of the total litigation going on in Canada? Or should it be Canada, where there's no question on personal jurisdiction, where the court could hear the entire case, and where the plaintiff is from Canada? For those reasons, the case should not be in the United States. It clearly should be in Canada. And this is the rare case, Your Honor, one last word on personal jurisdiction. This is the rare case, if not the only case, in which both sides are contesting personal jurisdiction. Tech did so in the underlying environmental action. They denied personal jurisdiction. And we, of course, think there's no personal jurisdiction. There are difficult jurisdictional questions. There are two foreign parties. This case should not be in the United States. Unless this court has further questions, I'll reserve the balance of my time for rebuttal. That's fine. Thank you. Thank you. Good morning, Your Honors. May it please the Court. Josh Rosenkranz from Warwick, Harrington, and Sutcliffe, representing Tech. We're here, Your Honors, because the district court did exactly what the courts of appeals have said it should do, in fact must do, when confronted with the scenario it was confronted with, where a party before it ran to a foreign court and asked the foreign court to interfere with the ongoing case currently before the district court for four years. Now, it is passing strange that appellants want to spend all of their time talking about issues other than the issue that brought us here. And there's just a strange time warp quality to the whole discussion that we're hearing from London insurers. They are talking about stale pleading level motions that they are now, I should say pleading stage motions, that they're now trying to appeal. So personal jurisdiction, a motion to dismiss on the second amended complaint. We are now on the fifth amended complaint, which broadens the allegations on personal jurisdiction. Could I just ask you for a second? You had said that the case was pending before the district court for four years. Was that on the insurance case, or was that on the underlying environmental case? Your Honor, the insurance case has been pending for five years. For five years? Yes. Before they filed in? For four years before, for five years now. No, no. Before it was filed in, the related case was filed up in British Columbia. Let me just be clear about the time. Two cases were filed at the same time. 2005, we filed first. They filed the same day. 2009 is when this injunction came down. But it wasn't pending before the district court for five years before they filed in British Columbia. Oh, no, no, not at all, Your Honor. What I'm saying is what the London insurers did, at a point at which this case in the district court was pending for four years, and the parallel case was pending for four years, was to run to the foreign jurisdiction and ask that foreign jurisdiction to interfere with the ongoing proceedings in the district court here. There were parallel proceedings going on for four years. And so it was just saying that there's this kind of time warp quality to this. On the personal jurisdiction, we're on the fifth amended complaint, which embellishes the jurisdictional, personal jurisdictional arguments to general jurisdiction, which would plainly pass muster. And on the venue question. Before you move from personal jurisdiction, do you agree with opposing counsel that there wasn't a contract entered into with a predecessor of London insurers in the state of Washington contrary to what the district court said? No, Your Honor. That first contract was executed in the state of Washington, page 2669 of the excerpts. You see right down on the bottom, Seattle, Washington. It was brokered and executed. In Washington. Yes. And they say that's a different contract. Doesn't it relate to the ones that are currently under consideration? Oh, no, no, Your Honor. It's quite a relevant policy. It was the very first policy for which we have coverage. But there's way more to say about personal jurisdiction, Your Honor. Let's start with general jurisdiction, which is pleaded in the current complaint, the complaint that was operative when this injunction went into effect. We pled that there is general jurisdiction because Lloyds and the London market insurers are doing business all over the state of Washington, and they are being sued and using the Washington courts, suing all over the state of Washington. Or even just on the basis of the long-run statute, which is all that the district. Are you saying it doesn't matter that that wasn't raised to the district court or wasn't argued before the district court, or are you saying it was argued before the district court? It was not raised before the district court because that was not the operative pleading four years ago, five years ago, but it is the operative pleading and the basis for personal jurisdiction when the district court entered the injunction in this case. But let's look at the complaint as it existed five years ago. That complaint pleads exactly what you need to plead under Washington's long-arm statutes. The contracts covered an insured party in the state of Washington, all subsidiaries, including Tech America, which is a subsidiary in the state of Washington. The contract covered insured risks in Washington, namely the risk that let's just say we're focused only on tech in Canada, that it will send a product in the stream of commerce, or quite literally in the stream next to it, that will end up injuring others anywhere in the world is what the insurance policy says. So the liability and the risk of the incurrence is in Washington, and it included a duty to defend under certain circumstances which could attach anywhere. So are you saying that if you enter into an umbrella insurance policy that covers the person wherever they operate, anywhere in the world or anywhere in the United States, that essentially that any court anywhere in the United States would have personal jurisdiction over the insurance company? Is that your theory? Absolutely, Your Honor. It would have personal jurisdiction. Now, venue might not lie everywhere. It would be silly to bring this case in Hawaii, but that's a venue problem. From the perspective of London insurers, the question for personal jurisdiction is, what did you expect when you signed the contract? They signed a contract insuring companies all over the world, that is subsidiaries, liability all over the world, and risks all over the world, and agreed to defend all over the world. So is it strange to expect that you might be hailed into court in Washington? Of course not. But let me shift, if I may, to venue, unless the Court has other questions on personal jurisdiction. Yeah. The question about Washington's long-arm statute, I guess it's a little bit confusing the way it's written, but at least it's susceptible to being interpreted that the cause of action has to arise from the act that they took in the State of Washington. So that the fact that, I guess it was the facility in Trail, B.C., ended up having a contaminating effect in Washington, the insurance covering that facility didn't arise in the State. Well, so, Your Honor, I have two answers to that. One is how to read the policy. Washington law says that these policies go to the fullest extent of due process, and the way you usually interpret a contract for due, assess the ramifications of a contract like this for due process purposes, is that if you have a contract and it covers liabilities anywhere in the world, or people, companies anywhere in the world, the arising under, as this Court said in Haysen, the arising under kind of folds into the contract itself. You expect it to be sued in Washington. You knew that that was a possibility. So sure enough, you can be sued in Washington. But let me. So we've said foreseeability is not enough, I think, if I'm recalling that. Absolutely. So I guess the question is whether they avail, if that's the right terminology, if they avail themselves of states that they're in. I mean, under your theory, any place that the insured opens up a facility, or it doesn't even have to if they're driving a truck across country, any place where the truck has a, causes liability, potentially the insurance company has agreed to personal jurisdiction in that state. That seems to sit uneasily with what the Supreme Court has told us, like a worldwide Volkswagen and the like. Well, not at all, Your Honor, because this is a contract case. And I would encourage the Court to re-read Haysen, which deals exactly with the relationship between the availment and what Your Honor is talking about, which is the acting under piece of it. And they really kind of collapse into each other. So, by the way, under this Court's opinion, Ntoazin does reasonableness because it's reasonable to hold someone accountable for a liability that they purposely undertook, wherever it may occur. But I said there was a second half to this, and that is where did this occurrence occur? The only way that there could possibly be a circular case is if the occurrence was here in Washington, if the risk was here in Washington. Because this Court held that the only way the EPA could reach tech for its discharge up in Canada was if there was a release in the state of Washington, in the upper Colorado River. And so, the occurrence language within both the long arm statute and this particular insurance policy makes the occurrence relevant here in Washington. They're also just turning then, if I may, to the venue issues. I assume that's something that's being litigated because. Oh, yes. That's not decided yet. This Court affirmed on the jurisdictional question, the question where the. . . The circle is incredibly broad. So, I mean, everything's an occurrence under a circle. And that's correct, Your Honor. And this case, the insurance coverage case, will be somewhat about that, but mainly about the pollution exclusion clause. So then on forum non, I need to correct what Mr. Cohen said. This case is not about which jurisdiction is better. Forum non is not a question of whether they're slightly better than Washington. It is whether this is an inappropriate forum. And this is most certainly an appropriate forum. The district court methodically analyzed all of the factors, and it came out with a view that was correct. Washington is the forum of all of the following. It was the forum of the alleged environmental harm, giving rise to tax liability. The forum of the activity by tax subsidiary to remediate and investigate the harm. The forum of the underlying suit, which is not a trivial fact, because there are huge advantages to the CERCLA case and the insurance case being tried by the same judge. It is the forum of the state that intervened because it believed it had interests to protect. And by the way, there is no pollution case up in British Columbia. And the British Columbia government has expressed no interest in the case here or up there. It is also, as we've been discussing, the forum, a forum that London insurers agreed that they could be sued in. Plus, we now know a fact, again this time warp notion, we now know a fact that wasn't known to the district court at the time, which is that Washington law is being applied to this case. So our standard is to say, assuming we reach forum nonconvenience, is to say did the district court abuse its discretion? What would you point to to say not that it would have been a better decision to decide otherwise, but that the district court actually abused its discretion in holding that it was not an inconvenient forum? Your Honor, I'm saying the exact opposite. We are defending the district court's conclusion that this was a perfectly appropriate forum. And in fact, the district court believed this was a better forum, not that that's the issue. Okay, I'll save my question for opposing counsel. Yes. And so unless there are more questions on personal jurisdiction or venue, I am going to rest on the briefs with regard to whether this court can even consider either of these questions and speak briefly about, well, actually, let me not, because appellants did not raise any of the jurisdictional arguments. I just want to make one observation about the jurisdictional argument they are making, that is the effort to review now the district court's denial of remand. Now, that is not a jurisdictional decision, as the Supreme Court held in Carlsbad. The district court clearly, everyone agrees, had jurisdiction at the moment of removal, and the district court then was allowed to exercise its discretion when the foreign state was out of the case to decide how much stays. Now, I just want to make a point, because it appears for the first time in this entire case in appellant's reply brief, their entire argument as to why there's no jurisdiction revolves around a Supreme Court case called Finley, where the Supreme Court said, you know, there are actions, additional, excuse me, additional claims and additional parties, and they might be treated differently. What appellants do not tell you is that the Congress disagreed with that view and passed the statute that we're all talking about, 1367, to override the Supreme Court's position on that, which is why we have the sentence in section 1367C, such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties. One last word on why we are actually here, and that is because, as I said earlier, the district court did exactly what at least two circuits have said it must do. It was not required to sit idly by and wait for a foreign court to interfere with the ongoing case that at that point it had before it for four years. It did not issue an order against the British Columbia court. It did the most modest thing it could do, which was tell the parties, no, you should do what the law encourages, and counsel is wrong when he says the law discourages parallel actions. The solution to the comedy puzzle in cases like this courts have held, including this court, and most notably the First Circuit in Quack, is to allow them both to proceed to judgment and then work it out at the end. Now, London insurers say, well, that's unseemly and it's wasteful. They had the choice not to bring that second lawsuit, and they decided that they wanted to bring the second lawsuit, and so any waste falls at their hands. If there are no further questions, Your Honors, I thank the court for its attention and respectfully request that the court affirm the injunction. Thank you, Your Honors. Thank you. Your Honor, three points. First of all, the Seattle broker. Mr. Rosenkranz refers you to ER page 2669 and says the policy was signed in Washington. That is false. Page 2669 is not a policy. It is a certificate issued by the Washington broker to the insured. It is not the policy. It was never incorporated into the policy. It was canceled as of its inception and replaced with a certificate that did not include the service of suit clause. We addressed this on page 33, footnote 3 of our opening brief, and Tech never responded. It was also addressed by the British Columbia court, and the British Columbia court said that Tech's argument, the same point that Mr. Rosenkranz just made, Tech's argument was wholly unfounded because the certificate, which again is not the policy, it's just a certificate, was canceled as of its inception date. The contract, the policy was entered into in London, not in Seattle. Tech never argued otherwise until today. Tech did not respond to our argument in our brief. In any event, that policy was just the first one, did not cover all the defendants, and there can't be a one-size-fits-all approach to personal jurisdiction. Finally, Tech's use of the Seattle broker was a unilateral decision, and its unilateral decision cannot translate into personal jurisdiction over any of the defendants, much less the defendants that weren't even subscribers to this policy. So the Seattle broker point is not a basis for keeping this case in the United States. The second point I'd like to address is the issue about the stale pleadings, and Mr. Rosenkranz mentions the case had been kicking around for almost five years. He fails to mention it was subject to a stay, a standstill agreement for almost three and a half of those years, and much of the most recent delay has been because Tech opposed our motion for expedition and sought extensions on their brief. In any event, Your Honor, where we are is on April 18th, the Canadian trial is supposed to begin. On May 2nd, the trial here in the United States is supposed to begin, and there are strategic questions that have to be made, questions of how these trials are going to be litigated. Is it going to be a race to judgment? Is it going to be a six-week trial in which many significant issues concerning many serious environmental spills throughout North America are going to be truncated and shoved into a six-week trial, or is it going to be addressed the way these issues should be addressed? And that's the issue that has to be resolved soon, and we can't resolve it until this Court decides whether there's a race to judgment in parallel proceedings or a single case being addressed in Canada. Procedurally, what happens if you have two conflicting judgments, one from the District Court here and the other from British Columbia? It's very unclear, Your Honor. It depends upon the laws of at least three countries, the U.S., Canada, and the United States. One of the questions is, is a not-yet-appealed judgment going to have race judicata effect? And that really is unclear. We don't want to be in that predicament where you have these conflicting results, and this Court discouraged that predicament in Seattle Totems when it discouraged an international race to judgment, which could lead to inconsistent results. The third point I'd like to make, Your Honor, is that, as Mr. Rosenkranz mentioned, this is a contract case. It's a contract case between two foreign parties, and the contract was entered abroad, negotiated abroad, and performance would occur abroad in the form of an international wire transfer from London, England, to Vancouver, Canada. This case is not about the cleanup. This case is not about the damage. This case is not about Pacutus. This case is about a contract dispute between two foreign parties, and Teck, to this day, still has not cited a single case in which any court, this court, any court, has ever approved a U.S. forum when you have no U.S. resident, not a single U.S. resident, and you've thorny jurisdictional questions, and Teck's only response is to raise new arguments, inoral arguments, that are rejected by the D.C. Court as wholly unfounded, as Seattle Broker Point. Your Honors, this case is more Canadian than Maple Leaf. This case should not be in the United States. Finally, Mr. Rosenkranz mentions the second lawsuit. He says the Canada action is the second lawsuit. The two cases were filed on the same day, and the only reason why they won the race to the courthouse was it wasn't a race to the courthouse. They went to the judge's home one second past midnight and filed the case there. Your Honor, this case belongs in Canada. You do not have a single U.S. resident. There are thorny jurisdictional questions. This is a duplicative subset. Irrespective of what happens here, the case in Canada must continue because there are many spills in Canada that cannot be addressed here. Unless this Court has further questions, I'm happy to sit down. We're happy to. Take a deep breath. Thank you. Thank you. We appreciate your arguments in this interesting case, and we will end our session for the week. Thank you all very much. All rise.
judges: B. Fletcher, Paez, Ikuta, Cjj